CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 11 2019

JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| TERRI POWELL, on behalf of herself and all other similarly situated, | ) ) ) | |
| PLAINTIFF, | ) ) | Case No. 4:18-cv-00058 |
| v. | ) ) | **MEMORANDUM OPINION** |
| IKEA INDUSTRY DANVILLE, LLC, | ) ) | By: Hon. Jackson L. Kiser Senior United States District Judge |
| Defendant. | ) | |

This matter, which is a purported collective action under the Fair Labor Standards Act, 29 U.S.C. § 203, et seq., is before the court on Defendant IKEA Industry Danville , LLC's ("IKEA") Rule 12(b)(1) Partial Motion to Dismiss for Lack of Jurisdiction [ECF No. 9]. The matter was fully briefed by the parties, and I heard oral argument on the motion on March 21, 2019. I have reviewed the pleadings, relevant legal authority, and submissions of the parties, making this matter ripe for disposition. For the reasons stated herein, I will deny the motion.

## I.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Defendant IKEA is "the world's largest producer of wood-based furniture and [it] manufacture(s) for IKEA customers all over the work." (Compl. ¶ 9 [ECF No. 1].) Plaintiff Terri Powell ("Plaintiff") was employed by IKEA at its Swedwood Danville facility as a Pack Team Captain starting in 2014 until her she left IKEA in April 2018. (Id. ¶ 26.) Plaintiff alleges that she routinely worked the 7:00 a.m. to 3:00 p.m., but was "required to come in at least 30 minutes early." (Id. ¶ 28.)

As it relates to her claims, Plaintiff contends that IKEA has a policy of "rounding" an employee's clock-in and clock-out time to its benefit. For example, Plaintiff alleges that, when she

clocked in at 6:20 a.m. and clocked out at 3:07 p.m. (8.8 hours), IKEA only paid her from 6:30 a.m. until 3:00 p.m. (8.5 hours). When she clocked in at 6:16 a.m. and clocked out at 3:08 p.m. (8.9 hours), IKEA again only paid her from 6:30–3:00 (8.5 hours). And when she clocked in at 6:19 a.m. and clocked out at 3:12 p.m. (8.9 hours), IKEA again rounded her hours to 6:30–3:00 (8.5 hours). (Id. ¶ 48.) In one two-week pay period, Plaintiff alleges that IKEA "shaved" 118 minutes off her reported work time and failed to include that time in her payroll calculations and earned wages. (Id. ¶ 51.) Plaintiff contends, on her own behalf and on behalf of other similarly situated employees, that IKEA's policy results in an unjust enrichment for IKEA in violation of Virginia common law. (Id. ¶¶ 69–73.)

Plaintiff filed this suit on October 16, 2018. On January 25, 2019, IKEA filed a motion to dismiss Count II of the Complaint, alleging that Plaintiff's unjust enrichment claim is preempted by § 301 of the Labor Management Relations Act. The matter was fully briefed by the parties, and I heard oral argument on IKEA's motion on March 21, 2019.

## II.    STANDARD OF REVIEW

When a challenge to subject matter jurisdiction is raised under Rule 12(b)(1), "the burden of proving subject matter jurisdiction is on the plaintiff." Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. "The court must grant the motion 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Little v. Stock Bldg. Supply, LLC, Case No. 4:10-cv-129, 2011 WL 5146179, at *3 (E.D.N.C. Sept. 2, 2011) (quoting Richmond, 945 F.2d at 768).

## III.  __DISCUSSION__

Section 301 of the Labor Management Relations Act provides that "suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction over the parties." 29 U.S.C. § 185(a) (2018). This provision "not only provides federal courts with jurisdiction over employment disputes covered by collective bargaining agreements, but also directs federal courts to fashion a body of federal common law to resolve such disputes." McCormick v. AT & T Tech., Inc., 934 F.2d 531, 534 (4th Cir. 1991) (en banc). "Moreover, to ensure uniform interpretation of collective bargaining agreements and to protect the power of arbitrators, the Supreme Court has found that § 301 *preempts and entirely displaces 'any state cause of action* for violation of contracts between an employer and a labor organization.'" Barton v. House of Raeford Farms, Inc., 745 F.3d 95, 107 (4th Cir. 2014) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23 (1983)) (emphasis as in Raeford). "As a result, a plaintiff may not rely on state law 'as an independent source of private rights to enforce collective bargaining contracts.'" Id. (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987) (internal quotation marks and citation omitted)). "Not only does this mean that a plaintiff may not pursue a state law breach of contract claim to enforce a collective bargaining agreement, but it also means that a plaintiff may not 'evade the requirements of § 301' through artful pleading." Id. (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985)). According to the Fourth Circuit, this means that, "when resolution of a state law claim depends substantially on the analysis of a collective bargaining agreement's terms, it must either be treated as a claim under § 301, subject to dismissal if the collective bargaining agreement's grievance and arbitration procedures have not been followed, or alternatively be dismissed as preempted by § 301." Id.

While relatively simple in theory, this becomes more complicated in practice. Obviously "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Livadas v. Bradshaw, 512 U.S. 107, 123 (1994). "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Id. at 124. "But when the evaluation of the state law claim 'is inextricably intertwined with consideration of the terms of the labor contract,' such that it is necessary to interpret the collective bargaining agreement to resolve the claim, the claim is preempted under § 301." Barton, 745 F.3d at 107 (quoting Allis-Chalmers, 471 U.S. at 213; citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 409–10 (1988)). Accordingly, "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." Livadas, 512 U.S. at 123–24 (internal citations omitted).

In the present case, after reviewing the nature of Plaintiff's state law unjust enrichment claim,[1] as well as the collective bargaining agreements[2] that were at issue during the relevant times periods (see Decl. of Bert Eades Exs. 1 & 2, Jan. 24, 2019 [ECF No. 10-1] (hereinafter "CBA")),

---

[1] Although Count I is a collective action under the FLSA subject to that statute's opt-in provision, see 29 U.S.C. § 216(b) (2018) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."), Count II is a Federal Rule of Civil Procedure 23 class action asserting a state law claim that is *not* subject to the FLSA's opt-in requirement. I refer to "Plaintiff's" claims rather than the class claims for two reasons; first is the ease of reference, and the second is that, at the time of this opinion, there has been no effort to certify a class as to Count II, and no additional opt-in consents regarding Count I.

[2] Two collective bargaining agreements were in force during the relevant time period. The first covered December 1, 2014 through October 31, 2017, and the second covered November 1, 2017 through October 31, 2019. While they differ in some respects, I found no appreciable difference in the portions relevant to this decision. For ease of reference, I use the term "collective bargaining agreement" to denote either or both of the agreements between the parties, as the case may be.

I find that Plaintiff's state law claim does not require interpretation of any contractual provision found within the collective bargaining agreement. To be sure, Plaintiff's unjust enrichment claim, at its essence, is that IKEA did not pay her for hours she worked; she alleges IKEA unfairly "shaved" time off her "clock time" to its benefit. (See Compl. ¶¶ 37–44 [ECF No. 1].) The collective bargaining agreement, while discussing pay rates for hours worked, does not define or address what constitutes "work" or how "hours worked" will be determined, nor does it outline a policy with regards to "rounding" its employees' "clock time."[3] To my mind, those are the vital questions on which Plaintiff's unjust enrichment claim turns; the collective bargaining agreement sheds no light on those questions. Accord Local #1674 of Howard Mental Health v. HowardCenter, Inc., No. 2:14-cv-67, 2014 WL 4240095, at *7 (D. Vt. Aug. 24, 2014) (finding a state law unjust enrichment claim was not preempted by § 301).

It is true that some terms of the collective bargaining agreement may be consulted in prosecuting this action; those terms, however, do not need *interpreting*. On this point, the Supreme Court's guidance is particularly instructive:

> A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective bargaining agreement and a separate state-law analysis that does not

---

[3] To be clear, Article 16 does address "Hours of Work," and defines a "day's work" as "Eight (8) or Twelve (12) consecutive hours in a regular work shift . . . ." ('17–'19 CBA art. 16 § 1.1; '14–'17 CBA art. 17 § 1.1 [ECF No. 10-1].) The gravamen of Plaintiff's unjust enrichment claim, however, is that IKEA failed to pay her (and others similarly situated) "for all reported work time," including straight-time and overtime and wages. (Compl. ¶ 20 [ECF No. 1].) After a review of Article 16, however, I do not foresee that its interpretation will bear on the outcome of Plaintiff's claim. Accordingly, because the interpretation of Article 16 is not necessary for addressing Plaintiff's unjust enrichment claim, § 301 does not require preemption. See Livadas, 512 U.S. at 124 ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.")

> turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby preempted. . . . [N]ot every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.

Lingle, 486 U.S. at 413 n.12 (quotation and citations omitted). The situation described in Lingle is the situation before this court. While terms regarding rate of pay may need to be applied to determine the amount of wages owed if Plaintiff establishes her claim, nothing in the collective bargaining agreement bears on defining what is compensable work for which Plaintiff is owed wages, IKEA's clock-time "rounding" policy, or how wages are calculated based on the time-keeping system. In every material regard, the collective bargaining agreement is silent on the issues raised in Plaintiff's unjust enrichment claim. Because the interpretation of the collective bargaining agreement is not necessary to decide Plaintiff's claim, § 301 does not require the preemption of her unjust enrichment claim, and this court may properly exercise its jurisdiction over that claim.

## IV.    CONCLUSION

Because interpretation of the collective bargaining agreement is not necessary to resolve this action, Count II is not preempted by § 301 of the Labor Management Relations Act. For that reason, IKEA's motion to dismiss is denied at this time. This ruling is without prejudice to IKEA's right to raise this issue again should discovery reveal the necessity of revisiting this ruling.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 11th day of June, 2019.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE