**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION**

| | | |
|---|---|---|
| **TERRI POWELL,** | ) | |
| | ) | |
| On Behalf of Herself and | ) | |
| All Others Similarly Situated, | ) | Case No.: 4:18-cv-00058 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COLLECTIVE & CLASS ACTION** |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **IKEA INDUSTRY DANVILLE, LLC** | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT
AGREEMENT, INCLUDING AWARD OF ATTORNEYS' FEES AND COSTS,
AND INTEGRATED MEMORANDUM IN SUPPORT**

---

Plaintiff Terri Powell, on behalf of herself and others similarly situated, with the

consent of Defendant IKEA Industry Danville, Inc. ("IKEA") moves this Court for an order

approving the parties' FLSA Settlement Agreement (attached as Exhibit 1) and approving

as reasonable the Settlement Agreement's proposed award of attorneys' fees and costs.

IKEA does not oppose this motion. In support of this motion, Plaintiff states as follows:[1]

---

[1] Throughout this Motion, Plaintiff uses initial caps to reference terms defined in the

I.      **CASE BACKGROUND**.

Plaintiff Powell filed this federal Fair Labor Standards Act ("FLSA") collective action lawsuit on October 16, 2018, alleging that she and other non-exempt employees employed by IKEA were unlawfully denied overtime premiums and straight-time pay pursuant to IKEA's system-wide pay and timekeeping practices. (ECF No. 1). IKEA filed its Answer, also asserting several affirmative defenses, on January 25, 2019. (ECF No. 6). Additionally, IKEA filed a motion to dismiss on January 25, 2019. (ECF No. 9 and 10). Plaintiff filed her response on February 7, 2019, and IKEA filed its reply on February 14, 2019. (ECF Nos. 16 and 18). On June 11, 2019, the Court denied IKEA's motion to dismiss. (ECF No. 25).

On October 14, 2019, Plaintiff moved for conditional certification of a collective action pursuant to § 16(b) of the FLSA. (ECF No. 26). IKEA filed its opposition to collective action certification on October 28, 2019 (ECF No. 27). And, on November 4, 2019, Plaintiff filed her reply in support of certification. (ECF No. 28). This motion is currently pending.

During the pendency of the motion, both parties served and responded to written discovery requests. (Declaration of Brett Davis ("Davis Decl"), ¶ 6, attached as Exhibit 2). IKEA produced information regarding each potential Opt-in Plaintiff's salary, work

---

Settlement Agreement (Ex. 1) and refers the Court to that agreement and its defined terms for consistency.

weeks, weeks during which no work was performed, and clocked hours sufficient to enable Plaintiff and her counsel to fully and fairly value Plaintiff's and the Eligible Claimants' claims. (Davis Decl, ¶ 7). Plaintiff and her counsel also conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit. (Davis Decl, ¶8). During the pendency of the motion, the parties agreed to explore a settlement on behalf of Team Captains (also known as Team Leads)—the position that Ms. Powell held during the statutory time period. (Davis Decl, ¶¶ 10-11).

Since approximately April 7, 2020, the parties have been negotiating a possible resolution for Team Captains which resulted in the Settlement Agreement attached at Exhibit 1. (Davis Decl, ¶ 11). In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, Plaintiff and her counsel believe this Settlement Agreement is in the best interests of Plaintiff and each Eligible Claimant who chooses to participate and represents a fair, reasonable, and adequate resolution of the claims in the Lawsuit. (Davis Decl., ¶ 12). IKEA denies and continues to deny Plaintiff's allegations in the Lawsuit. Nonetheless, without admitting any liability or responsibility for damages, IKEA has agreed to settle the Lawsuit on the terms and conditions set forth in the Agreement to avoid the burden, expense, and uncertainty of continuing litigation. If this Settlement Agreement is approved, the Parties have agreed to give all Eligible Claimants— i.e., any of the Team Captains other than Terri Powell who worked at IKEA from April 15, 2017 through the Effective Date—45 days to opt-in to the class and receive their share of

the settlement proceeds. (Davis Decl., ¶ 16). Only Eligible Claimants who elect to participate in the Settlement will receive a payment and release claims, all others will retain their rights, if any, to pursue their own claims.

## II.  <u>SETTLEMENT AGREEMENT TERMS</u>.

The Settlement Agreement is attached hereto as Exhibit 1, and the Court is respectfully referred thereto for the complete terms and conditions of the settlement. However, by way of summary, the key settlement terms include:

- IKEA shall remit a Gross Settlement Fund amount equal to $220,000.00;

- the attorneys' fee portion of the Gross Settlement Fund amount will be equal to the sum of $78,701.49 (e.g. 35.8%);

- the costs and expenses portion of the Gross Settlement Fund amount will be equal to the sum of $1,298.51;

- Plaintiff Powell and all Eligible Claimants who choose to timely submit an opt-in consent will receive a settlement payment and release their federal, state, and local straight time and overtime claims though the Effective Date;

- the Net Settlement Fund (Gross Settlement Fund, minus Attorneys' Fees and Costs, Service Payment, and Administrative Costs) will be allocated pro rata amongst Plaintiff and the Eligible Claimants—after each receives a $200 minimum allocation—based upon an equitable points system,

accounting for each person's average weekly salary and number of eligible FLSA Workweeks;

- lead Plaintiff Terri Powell will receive a Service Payment in the amount of $2,500 for the work she performed initiating and litigating this case on behalf of all Eligible Claimants;

- once the Court approves the motion and the opt-in period closes, the settlement share for Plaintiff and the Claimants will be paid out and the unclaimed share for any Eligible Claimant who fails to opt-in (and therefore retains their rights, if any, to pursue a claim) shall revert back to IKEA;

- this action shall be dismissed, with prejudice.

## III. <u>ARGUMENT.</u>

### A. <u>This Court Should Approve The Parties' Settlement.</u>

An FLSA collective action is not a class action – individuals participating affirmatively choose to be bound and represented by counsel, and there will be no absent class members whose claims are being settled. Thus, the reasons for judicial scrutiny of class action settlements are not present in FLSA opt in settlements, because absent class members are not bound by the case's outcome. *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C. 1977); *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972). Indeed, once this agreement is approved, all Eligible Claimants will be given an

opportunity to opt-in to the settlement if they choose to do so. If they do not, their claims will not be released. (See Ex. 1, Settlement Agreement at ¶ 2(F)). Instead, the money allocated to resolve their claims will revert back to IKEA. *Id.* Unlike settlements under Rule 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

Nonetheless, courts have held that settlement of FLSA claims, in order to effectuate a release, must be presented to the district court for review and determination whether the settlement is fair and reasonable. *Martinez v. HDS Lawn Maintenance & Landscaping, Inc,* No. 1:16cv1429, 2017 WL 11506334, * 1 (E.D. Va. March 27, 2017); *In re: Dollar General Stores FLSA Litigation*, 5:09-MD-1500, 2011 WL 3904609 *2 (E.D.N.C. Aug. 22, 2011); *Wagner*, 76 F.R.D. at 23. For the Court to approve a FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties. The Court may enter a stipulated judgment only after reviewing the settlement for fairness. And the settlement agreement must contain an award of reasonable attorneys' fees. *Id.*; *see also*, *Martinez*, 2017 WL 11506334 at *1 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

The Fourth Circuit has not addressed the factors courts should consider when approving FLSA settlements; however, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores.*" *Martinez*, 2017

WL 11506334 at *1 fn 2. The standard for court approval is straightforward: a district court should approve a fair and reasonable settlement if it was reached as an arm's length resolution of contested litigation to resolve a bona fide dispute under the FLSA. *Lynn's Food Stores,* 679 F.2d at 1352-54. First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* at 1353. Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arm's-length settlement as *indicia* of fairness. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Based upon the contested nature of this case and the quality of the settlement, Plaintiff respectfully submits that this Court should conclude that the parties' settlement is a reasonable arms-length resolution of a *bona fide* dispute in contested litigation, and thus approve the settlement.

       **1.**       **The Proposed Settlement Is The Product Of Contested Litigation.**

Unquestionably, the proposed settlement is the product of contested litigation. *See* Docket Sheet. In her Complaint, Plaintiff made detailed, factual allegations describing IKEA's allegedly unlawful compensation practices. IKEA filed their Answer denying all of Plaintiff's material factual allegations and asserting an array of affirmative defenses that

it argued would bar Plaintiff's claims in whole or in part. IKEA also filed a motion to dismiss which was later denied.

The parties conducted factual investigations regarding the issues raised in Plaintiff's Complaint and IKEA's Answer. Both parties served and responded to written discovery requests. IKEA produced information regarding each potential Opt-in Plaintiff's salary, work weeks, weeks during which no work was performed, and clocked hours sufficient to enable Plaintiff and her counsel to fully and fairly value Plaintiff's and the Claimants' claims. (Davis Decl., ¶7). Plaintiff's counsel investigated the facts, reviewed documents produced and analyzed pay and time records. (Davis Decl., ¶8). The parties also undertook considerable legal analysis of the various issues implicated in this case, including, but not limited to, fully analyzing the issues pertaining to FLSA conditional certification and the application of rounding issues to the facts of this case. (Davis Decl., ¶9).

The parties were only able to reach an agreement after over a month of serious and hard-fought negotiations. (Davis Decl., ¶ 13). Before the settlement, the parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue. (Davis Decl., ¶14). Accordingly, this Court should readily conclude that the proposed settlement was the product of contested litigation.

      2.       **The Settlement Fairly and Reasonably Resolves A Bona Fide Dispute.**

This settlement is the product of arm's-length negotiations by experienced counsel and provides significant monetary relief to Plaintiff and all Eligible Claimants who choose to participate. It also eliminates the real, inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness attaches to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The litigation was hard fought and settled only after contested motions (including a motion to dismiss and conditional certification), written discovery, and review of the documents IKEA produced, including but not limited to, electronic pay and time records. (Davis Decl., ¶15). Serious questions of fact and law placed the ultimate outcome of the litigation in doubt. Plaintiff claimed, among other things, that she and the other Eligible Claimants had not been paid for work performed on the clock because of IKEA's unlawful time-shaving policy, while IKEA contended the opposite and argued it utilized a rounding policy legally allowed under the FLSA and that any time rounded was not compensable.

Both sides ran the risk that summary judgment motions would be denied and that each side would have to persuade a jury that the evidence supported them on these issues. In particular, Plaintiff and the other Team Captains would have to demonstrate that any time shaved off of clocked hours was compensable work time under the FLSA, the time shaving resulted in unpaid overtime hours, and any purported "rounding policy" worked disproportionately to IKEA's benefit. At the same time, IKEA would argue that the amount of such time "rounded" was *de minimis*, which Plaintiff and Team Captains would refute.

The settlement offers significant payments to Plaintiff and the Eligible Claimants now. (Davis Decl., ¶ 17). Under the settlement terms, each of approximately 48 Eligible Claimants (including Plaintiff) will be allocated an average payment of approximately $2,600.00, which amounts to an average of approximately 130 hours of pay for Plaintiff and each of the Eligible Claimants at $20/hour. (Davis Decl., ¶ 18).

This is significant and meaningful relief warranting settlement approval. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the

future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute over alleged FLSA violations and approve the settlement.

**B.**    **This Court Should Approve the Requested Service Award.**

The parties' Settlement Agreement provides for a Service Payment of $2,500 for named Plaintiff Terri Powell, who provided invaluable service to Plaintiff's Counsel and, ultimately, the Eligible Claimants.  (Davis Decl., ¶ 19). Plaintiff Powell has worked with Plaintiff's Counsel for nearly two years both before and throughout this litigation, to pursue these claims on behalf of the Eligible Claimants.  (Davis Decl., ¶20).  Plaintiff Powell provided necessary evidence for the Court in support of the conditional certification motion and assisted Counsel in the discovery process to prepare for negotiations in this matter.  *Id.* She educated Plaintiff's Counsel on many of IKEA's pay and time-keeping documents, policies, and practices, and this service enabled Plaintiff's Counsel to direct its discovery efforts and, in turn, obtain the best settlement result possible for all Eligible Claimants.  *Id.* The requested payment rewards Plaintiff for her service to the Eligible Claimants, which

we estimate required over 50 hours of time.  *Id.*. Without Plaintiff stepping forward to put her name on the lawsuit and her assistance over the course of nearly two years, it is unlikely that any recovery would have been as beneficial to the group. *Id.*

District Courts recognize that the time and dedication an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what the typical Collective member is receiving. *See, e.g., McLaurin v. Prestage Foods Inc.*, No.  7:09-CV-100, 2011 WL 13146422 *4 (E.D.N.C. September 11, 2011) (approving service awards of $10,000 and $5,000 to lead Plaintiffs); *see also*, *Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, Nos. CIV 89-833 and CIV 89-1186, 1993 WL 355466, *2 (W.D. Okla. 1993) (awarding $10,000 service award to each of three collective representatives); *Kamp v. The Progressive Corp.*, Nos. Civ.A 01-2680 and Civ.A. 03-2507, 2004 WL 2149079, *6, 22  (E.D. La. 2004)) (approving up to $10,000 in service awards to collective representative and other plaintiffs); *Salinas v. U.S. Xpress Enterprises, Inc.*, No. 1:13-cv-245, 2018 WL 1475610, *1 (E.D.Tenn. Mar. 26, 2018)(approving special masters' proposed service award of $10,000 to named plaintiff and $500.00 to opt-in plaintiffs who were deposed).

In fact, District Courts often approve higher service awards in the context of class and collective action litigation.  *See Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), 2009 WL 10694829, at *4 (E.D. Mo. Aug. 21, 2009) (approving an incentive award of $30,000).  Accordingly, this Court should approve the modest

Service Payment requested in this case as a reward for Plaintiff's contributions to the case and to the Eligible Claimants as a whole.

**C.** **The Attorneys' Fees and Expenses Requested Are Reasonable And Warrant This Court's Approval.**

Plaintiff seeks an award of $78,701.49 of the Gross Settlement Fund ($220,000.00) as attorneys' fees, plus their costs and expenses of $1,298.51. Though an award of attorneys' fees in an FLSA settlement is mandatory, the Court has discretion to determine the reasonableness of the fee amount. *See Lynn Food Stores,* 679 F.2d at 1354.

Considering percentage fees awarded in other common fund cases, and also applying the *Johnson v. Georgia Highway Express, Inc*. factors explained below, the fee Plaintiff seeks in this case is abundantly reasonable and warrants this Court's approval.

**1.** **Thirty-Five Percent Of The Common Fund Is A Reasonable Fee.**

Under the FLSA, prevailing plaintiffs are entitled to recover their reasonable attorneys' fees. *See* 29 U.S.C. § 216(b).  In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following this guidance, the parties agreed that Plaintiff's Counsel would receive $78,701.49 (e.g. 35.8% of the Settlement Fund as attorneys' fees, plus reimbursement of out-of-pocket costs and expenses).

The percentage of the fund that counsel seeks here falls squarely within the range this District and others have approved in other FLSA cases. *See, e.g.*, *Winingear v. City of Norfolk, Va.*, No. 2:12cv560, 2014 WL 3500996 at *6 (E.D. Va. July 14, 2014)(concluding that a fee request that was 35% was appropriate and noting that Courts have routinely approved percentage recoveries in FLSA cases approaching 40% of the total recovery); *Epps v. Scoffolding Solutions, LLC*, No. 2:17-cv-562, 2019 WL 6888546, *5 (E.D. Va. Dec. 11, 2019)(approving fee award of 55%); *Garcia v. Decalo Medical Group LLC*, No. 14-CV-00301, 2015 WL 9311984, *7 (D. Md. Dec. 23, 2015)(approving fee award of 40%); *Hatzey v. Divurgent, LLC*, No. 2:18-cv-191, 2018 WL 5624300, *5 (E.D. Va. Oct. 9, 2018)(concluding that a fee request of 33% was appropriate even though fee request was 6.4 times Plaintiff's counsel's actual loadstar); *Hargrove v. Ryla Teleservices, Inc.*, No. 2:11cv344, 2013 WL 1897027, *4, *7 (E.D. Va. Apr. 12, 2013)(approving fee request of 33%); *Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 3743098, at *8 (D. Kan. July 13, 2016) (also approving fee award equal to 33% of the common fund).

Accordingly, an award of $78,701.49 or 35.8% of the common fund plus out-of-pocket costs and expenses is abundantly reasonable in this case.

### 2. The Requested Fee Is Also Reasonable Under *Johnson*.

Other factors that Courts consider in determining the reasonableness of an attorneys' fee award include the following twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974): (1) time and labor required; (2) novelty

and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and the results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. Applying these factors here confirms the reasonableness of the requested fee.

- *Johnson* Factor 1: Time and Labor Involved

This case required Plaintiff's Counsel to expend significant time and labor in pursuing these claims and the amount of fees sought is actually less than Plaintiff's Counsel's lodestar fee. Specifically, Plaintiff's Counsel have litigated the claims in this case for over a year and a half and spent over 315 hours working on this case with no assurance of any recovery at all. (Davis Decl., ¶ 21; Billing Summary, attached as Exhibit 3). These hours include time spent investigating the facts of this case;; drafting and responding written discovery requests; briefing the conditional certification motion; conducting discovery of and analyzing complete time records for Plaintiff and Eligible Claimants; preparing a damage model and performing damages calculations for Plaintiff and all Eligible Claimants in preparation for settlement discussions; participating in settlement discussions; negotiating a settlement favorable to Plaintiff and all Eligible

Claimants; devising a settlement allocation formula to ensure an equitable distribution of funds; and drafting the Settlement Agreement and approval papers. (Davis Decl., ¶ 22.

And, while Courts have applied a "lodestar cross-check" to determine whether fees sought are reasonable, Plaintiff's Counsel are seeking *less* than their lodestar with this settlement. As of the filing of this application, Plaintiff's Counsel's lodestar is approximately $176,465.00 at their standard hourly rates.[2] (Davis Decl., ¶23; Billing Summary, Ex.3). However, with this settlement, Plaintiff's Counsel only seeks to recover $78,701.49 in attorneys' fees, resulting in an approximate 55% reduction of Plaintiff's Counsel's lodestar and a blended hourly rate of only $247 per hour, which is well below the rates regularly approved in FLSA cases. *Id. See*, *e.g.*, *Monroe v. FTS USA, LLC,* 2:08-cv-0211, 2014 WL 4472720, *12-13 (W.D. Tenn. July 28, 2014) (approving rates up to $600/hour); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 507 (M.D.N.C. 2018) (approving FLSA settlement and holding that Ms. George's and Mr. Strianese's standard hourly rates of $575 and $400, respectively, "fall within what the court observes to be the prevailing market rates in the relevant community for this type of work."); *Personhuballah v. Alcorn*, 239 F. Supp. 3d 929, 948 (E.D. Va. 2017) (approving

---

[2] Brett Davis' rate for FLSA class and collective work is $675.00/hour. Tracey George's rate for FLSA class and collective work is $575.00/hr. Nicholas Walker's rate for FLSA class and collective work is $475.00/hour. Christopher Strianese's rate for class and collective action work is $400.00/hour. Gregg Greenburg (who did minimal work associated with being local counsel) has a rate of $350.00. (Davis Decl., ¶23). However, Plaintiff's Counsel has agreed to seek less than their lodestar fees in order to secure a favorable settlement for Plaintiff and the Eligible Claimants.

rates of $575 for senior partners, $390 to $410 for senior associates, and $310 to $345 for junior associates), *vacated and remanded on other grounds*, *Brat v. Personhuballah*, 883 F.3d 475 (4th Cir. 2018).

The fees sought by Plaintiff's Counsel are certainly reasonable considering that courts routinely approve multipliers above and beyond the lodestar as reasonable fee awards in collective cases. *Hatzey,* 2018 WL 5624300, *5 (E.D. Va. Oct. 9, 2018) (approving fee award resulting in a lodestar multiplier of 6.4 of the lodestar); *See, e.g.*, *In re Bank of Am. Wage & Hour Emp't Litig.*, No. 10-MD-2138-JWL, 2013 WL 6670602, *3 (D. Kan. Dec.18, 2013) (approving a fee award representing a 1.10 multiplier of the lodestar); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (finding that percentage fee award resulting in a lodestar multiplier of 1.18 was "imminently reasonable" based on counsel's risks associated with taking the case); *Koehler*, 2016 WL 3743098, *6 (approving fee award equivalent to 1.3 times the Court's determined lodestar amount as reasonable).

As such, given that the agreed upon fee is less than Plaintiff's Counsel's time and labor invested in this case, this factor weighs heavily in favor of approving the fee as reasonable.  It is important to remember that this is Plaintiff's Counsel's only opportunity to be awarded fees for the work on this case. However, their work to administer the settlement will continue after this application without any compensation.   (Davis Decl., ¶ 25).  As an example, there will be inquiries from the Eligible Claimants regarding the terms

and consequences of the decision to opt into the settlement and the computation and payout of the settlement. Counsel will perform this work without any additional compensation. *Id.*

- *Johnson* Factor 2: Novelty and Difficulty of Question Presented

FLSA collective actions are both procedurally and substantively complex. Here, there was significant disagreement with respect to whether employees' unpaid clocked hours were compensable work time. This presents unique evidentiary hurdles to establishing both liability and damages in a case such as this. This required Plaintiff's Counsel to analyze and investigate the nature of the tasks performed by Plaintiff and the Eligible Claimants, including IKEA's expectations and directives given to Team Captains as compared to other categories of employees that worked for IKEA. As such, this factor weighs in favor of approving the fee requested.

- *Johnson* Factor 3: Skill Requisite to Perform Legal Service Properly

Plaintiff's Counsel's practice is largely devoted to plaintiff-side FLSA collective actions. (Davis Decl., ¶ 26). Plaintiff's Counsel stay abreast of the changing law to ensure they maximize their clients' recovery in cases pending all across the United States. (Davis Decl., ¶ 27). This is because it is a unique niche area of law, the landscape of which changes regularly as a result of growing jurisprudence spanning the entire country. *Id.* Due to the nature of FLSA litigation, attorneys handling these cases must also be prepared to make these investments with the very real possibility of ultimately obtaining no attorney fees or

recovery of costs expended. This type of risk is outside the scope of risk that most attorneys and firms can and are willing to handle.  (Davis Decl., ¶ 28).

- *Johnson* Factor 4:  Preclusion of Other Employment

Plaintiff's Counsel litigated this case for nearly one and a half years. While the work required did not place any significant hurdles for Plaintiff's Counsel to do other work, the time spent on this could have been spent on other matters.

- *Johnson* Factor 5: Customary Fee

Plaintiff's Counsel customarily charges a 40% contingency fee, and that is the fee for which Plaintiff Terri Powell contracted in this case.  However, Plaintiff's Counsel has agreed to effectively seek contingency fee less than the agreed upon amount with this Settlement Agreement, and this factor weighs in favor of approval.  (Davis Decl., ¶ 29).

- *Johnson* Factor 6: Whether Fee is Fixed or Contingent

As explained for Factor 5, Plaintiff's Counsel took this case on a 40% contingency contract.   Accordingly, Plaintiff's Counsel undertook this litigation with the risk of obtaining nothing if no recovery was obtained for Plaintiff or the Eligible Claimants. Moreover, Plaintiff's Counsel's contingency arrangement required them to invest both time and expenses with no guaranty of recoupment.  This factor favors fee approval.

- *Johnson* Factor 7:  Time Limitations Imposed

There were no unusual time limitations imposed by this case.

- *Johnson* Factor 8: Amount Involved and Results Obtained

Given the significant dispute concerning hours clocked and hours worked, Plaintiff's Counsel obtained an excellent result for all Eligible Claimants, as described in detail above and in the accompanying settlement agreement.

- *Johnson* Factor 9: Experience, Reputation and Ability of Attorneys

Plaintiff's Counsel have significant experience in litigating FLSA wage and hour cases across the country and enjoy impeccable reputations for success in this area of law. Attorney Tracey George has 20 years of legal experience and has served as Plaintiff's Counsel in dozens of FLSA collective actions. (Davis Decl., ¶ 30). Attorney Brett Davis has more than 27 years of legal experience and has served as lead counsel in numerous complex cases. *Id.* Attorney Nicholas Walker has more than 15 years of legal experience and previously worked as a partner in the some of the most well-known management side employment boutique firms[3] in the country regularly handling complex multi-plaintiff litigation. *Id.* Attorney Christopher Strianese has more than 15 years of legal experience and has served as class counsel in numerous FLSA collective action cases in the Fourth Circuit (Davis Decl., ¶ 31). Together, Plaintiff's Counsel have recovered many millions of dollars on behalf of FLSA opt-in plaintiffs. (Davis Decl. ¶ 32). This factor weighs in favor of fee approval.

- *Johnson* Factor 10: Undesirability of the Case

---

[3] Littler Mendelson, Ogletree Deakins, and Constangy Prophete.

Plaintiff's Counsel did not find this case undesirable to prosecute. However, many attorneys are reluctant to take on cases such as this where there is a very real risk of no recovery and the time commitment can be significant.

- *Johnson* Factor 11: Nature and Length of the Professional Relationship

As stated above, Plaintiff Terri Powell engaged Plaintiff's Counsel's services nearly two years ago.

- *Johnson* Factor 12: Awards in Similar Cases

As discussed above, fee awards between 33% and 40% of the common fund are common in FLSA cases. *See*, *e.g.*, *Winingear*, 2014 WL 3500996 at *6 (concluding that a fee request that was 35% was appropriate and noting that Courts have routinely approved percentage recoveries in FLSA cases approaching 40% of the total recovery); *Epps,* 2019 WL 6888546, at *5 (approving fee award of 55%); *Garcia* 2015 WL 9311984, at *7 (approving fee award of 40%); *Hatzey,* 2018 WL 5624300, at *5 (concluding that a fee request of 33% was appropriate even though fee request was 6.4 times Plaintiff's counsel's actual loadstar); *Hargrove*, 2013 WL 1897027 at *4 and *7 (33%); s*ee, e.g., Barbosa v. National Beef Packing Co. LLC*, No. 12-2311, 2015 WL 4920292, at *11 (D. Kan. Aug. 18, 2015); *DeMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 3322580, *8-9 (S.D. N.Y. Aug. 23, 2010); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, * 7-8 (N.D. Ohio Mar. 8, 2010). Fee awards in other FLSA cases readily support Plaintiff's Counsel's fee request here.

Applying the *Johnson* factors, Plaintiff's Counsel's fee request is reasonable and warrants approval.

### 3. Plaintiff's Request For Costs And Expenses Is Also Reasonable.

An award of reasonable attorneys' costs and expenses is also mandatory under the FLSA. *See* 29 U.S.C. 216. Under the FLSA, this may include "reasonable out of pocket expenses" that go "beyond those normally allowed under Fed. R. Civ. P 54(d) and 28 U.S.C. § 1920." *Smith v. Diffee Ford Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *Lamon v. City of Shawnee, Kan.*, 754 F. Supp. 1518, 1524 (D. Kan. 1991) (noting expenses under the FLSA generally include "all reasonable out-of-pocket expenditures" that are not "normally absorbed as part of law firm overhead"), *rev'd* in part on other grounds by 972 F.2d 1145; *Calderon v. Witvoet,* 112 F.3d 275, 276 (7th Cir. 1997) (observing that expenses such as travel are not "costs" under 29 U.S.C. § 1920, but "are nonetheless reimbursable-but as part of the award for attorneys' fees, because travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services.").

Plaintiff's Counsel request reimbursement for $1,298.51 in expenses. (Davis Decl., ¶ 34). These expenses were reasonably and necessarily incurred in the prosecution of this complex collective case. *Id.* Accordingly, Plaintiff requests this Court approve Plaintiff's Counsel's award of costs and expenses in the amount of $1,298.51.

WHEREFORE, for these reasons, Plaintiff requests this Court's Order approving the parties' Settlement Agreement as fair and reasonable (Ex. 1), including its provision for Plaintiff Terri Powell's $2,500 service award, approving the proposed Opt-in Notice and Consent (Ex. 1-1) and approving an award of attorneys' fees equal to $78,701.49 (e.g. 35.8% of the Gross Settlement Fund) plus costs and expenses.

Date: June 30, 2020.

Respectfully Submitted,

/s/ *Gregg C. Greenberg*
Gregg C. Greenberg, VA Bar No. 79610
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Springs, Maryland 20910
Tel: 301-587-9373
Fax: 240-839-9142
ggreenberg@zagfirm.com
www.zagfirm.com

Christopher R. Strianese, N.C. Bar No. 46918
*Admitted Pro Hac Vice*
STRIANESE HUCKERT, PLLC
3501 Monroe Rd.
Charlotte, NC 28205
Tel. 704-998-2577
Fax. 704-998-5301
chris@strilaw.com
www.strilaw.com

Tracey F. George, MO Bar No. 52361
*Admitted Pro Hac Vice*
Brett A. Davis, MO Bar No. 43299
*Admitted Pro Hac Vice*

DAVIS GEORGE MOOK LLC
1600 Genessee St., Suite 328
Kansas City, MO 64102
Tel. 816-569-2629 ext. 2
Fax.  816-447-3939
tracey@dgmlawyers.com
www.dgmlawyers.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that I have served the foregoing **MOTION TO APPROVE FLSA SETTLEMENT AGREEMENT, INCLUDING AWARD OF ATTORNEYS' FEES AND COSTS, AND INTEGRATED MEMORANDUM IN SUPPORT** on Defendant via the Court's CM/ECF electronic filing system, which will send electronic notification to the following:

> Tevis Marshall
> Bret G. Daniel
> Ogletree, Deakins, Nash, Smoak and Stewart P.C.
> Riverfront Plaza West Tower
> 901 E. Byrd Street, Suite 1300
> Richmond, Virginia 23219
> rshaw@gordonrees.com
> Telephone:    804-663-2333
> Fax:              804-225-8641
> *Attorneys for Defendant*

This is the 30th day of June, 2020

/s/ *Gregg Greenberg*
Gregg C. Greenberg, VA Bar No. 79610
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Springs, Maryland 20910
Tel: 301-587-9373
Fax: 240-839-9142
ggreenberg@zagfirm.com

www.zagfirm.com

Christopher R. Strianese, N.C. Bar No. 46918
*Admitted Pro Hac*
STRIANESE HUCKERT, PLLC
3501 Monroe Rd.
Charlotte, NC 28205
Tel. 704-998-2577
Fax.  704-998-5301
chris@strilaw.com
www.strilaw.com

Tracey F. George, MO Bar No. 52361
*Admitted Pro Hac*
Brett A. Davis, MO Bar No. 43299
DAVIS GEORGE MOOK LLC
1600 Genessee St., Suite 328
Kansas City, MO 64102
Tel. 816-569-2629 ext. 2
Fax.  816-447-3939
tracey@dgmlawyers.com
www.dgmlawyers.com

**ATTORNEYS FOR PLAINTIFF**